MECHANICS' NATIONAL BANK *vs.* EDWARD B. ROBINS & another.

Worcester. Oct. 4, 1882. — March 2, 1883. C. ALLEN, COLBURN & HOLMES, JJ., absent.

In an action against the acceptor of a draft, there was evidence that the drawer of the draft was liable on a note held by a bank and soon to fall due; that it was agreed between the defendant, the drawer and the bank, that the defendant should accept a draft in favor of the bank, which draft should be discounted by the bank and used to pay the note, and that the note should be delivered to the acceptor. *Held*, that it was a necessary part of this agreement that the bank on discounting the draft should become the owner of it.

CONTRACT against the members of a firm, doing business under the name of Robins and Bullens, as acceptors of a draft for $2386.63, dated Worcester, July 13, 1880, drawn upon the defendants by the " Adriatic Woollen Mills, James A. Smith, Agt.," and payable five days after sight. Trial in the Superior Court, before *Knowlton*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff produced the draft, and proved the acceptance of it by the defendants on July 14, 1880, and rested its case. The defendants then put in evidence tending to show the following facts:

Prior to July 9, 1880, H. H. Chamberlain and Oscar J. Smith were partners, doing business under the firm name of the Adriatic Woollen Mills, James A. Smith, agent. About that date, Chamberlain became personally insolvent, and on July 9 assigned his property, including his interest in the partnership, to Harrison Bliss, the president of the plaintiff bank, and James A. Smith, in trust for his creditors; and his assignees and Oscar J. Smith continued the business under the same firm name, and opened an account with the plaintiff bank. The defendants were, and had been, the selling agents of the firm in Boston. The plaintiff bank then held a note of the firm for $1500, and a draft on the firm for $886.63, both due on July 13, 1880. There were also other liabilities of the firm soon to become due.

The defendant Robins testified that on said July 13 he had an interview with Bliss and James A. Smith, at which he proposed a scheme to enable the firm to continue business, by providing for its liabilities then about to mature, part of which was that the firm should, on July 13, draw a draft on the defendants for $2386.63, which the defendants would accept; that the bank should discount the draft, and with it pay the note and draft falling due that day. Robins further testified as follows: " I told Bliss he must agree to discount my acceptances and trust me to that extent; that I must have my vouchers, that is, the notes, and I would take my chances whether they were good or bad; that I must have them, I meant the note and draft; that I considered it was safe to take the paper paid by the draft, and he was to hand it to me; he called the cashier, and Bliss told him to make out a draft for the amount. The draft was presented to me, and I said I would rather have it come through the Boston Bank in regular course of business. Bliss agreed to put the amount of the draft to the credit of the firm that day. The draft came and I accepted it, but I never received the note and draft from the bank as my collateral."

Robins further testified that he went to the plaintiff bank on July 16th, and asked the cashier for the note and draft, but he

declined to give them up, as he had not received a check from Smith for $1500; that on the 17th he wrote to the plaintiff bank requesting that the note and draft be sent to him; that on the 21st, not having received any answer to the letter of the 17th, he wrote a letter, addressed to Bliss as president of the plaintiff bank, in which the defendants declined to pay the draft, on the ground, among others, that the note and draft of the Adriatic Mills had not been given up; that, on the 22d, before the acceptance was brought in for payment, he received a telegram from the cashier of the plaintiff bank, as follows: " Mr. Bliss has not been well, and did not fully understand about your acceptance; I hold the Adriatic Mills note and draft as your property and subject to your order; " that he understood the telegram, but did not believe it, as the cashier had twice refused to give up the note and draft; that it made no difference whether he received the note and draft on the 17th or the 22d; and that the cashier afterwards offered to give up the note and draft.

It further appeared that on July 13th the amount of the draft in suit was placed by the plaintiff to the credit of the account of the Adriatic Woollen Mills, and went to pay the note to the bank of $1500, and the draft of $886.63.

On this evidence, the plaintiff asked the judge to rule that it furnished no legal ground of defence; and that the plaintiff was entitled to a verdict. The judge so ruled; the jury returned a verdict for the full amount of the draft; and the defendants alleged exceptions.

*J. C. Ropes,* (*W. S. B. Hopkins* with him,) for the defendants, contended that there was evidence which would warrant the jury in finding that the acceptance was delivered upon a condition, and that this condition had not been performed; and cited *Watkins* v. *Bowers,* 119 Mass. 383; *Sweet* v. *Stevens,* 7 R. I. 375; *Benton* v. *Martin,* 52 N. Y. 570, 574; *Bell* v. *Ingestre,* 12 Q. B. 317; *Pym* v. *Campbell,* 6 El. & Bl. 370, 374; *Lloyd* v. *Howard,* 15 Q. B. 995; *Adams* v. *Jones,* 12 A. & E. 455; *Marston* v. *Allen,* 8 M. & W. 494; *Furness* v. *Meek,* 27 L. J. (Exch.) 34.

*F. P. Goulding & F. H. Dewey, Jr.,* for the plaintiff.

FIELD, J.   The defendants contend that there was evidence for the jury that the draft was never delivered to the plaintiff

except upon a condition which was not performed. It is not denied in argument that, if the draft was delivered to the plaintiff, so that it acquired title to it, the evidence discloses no defence to the action. *Waterhouse* v. *Kendall*, 11 Cush. 128. *Thayer* v. *Stevens*, 11 Cush. 167. *Hodgkins* v. *Moulton*, 100 Mass. 309. *Davis* v. *Randall*, 115 Mass. 547. *Allen* v. *Furbish*, 4 Gray, 504. *Perkins* v. *Young*, 16 Gray, 389.

The evidence was uncontradicted that it was the agreement between the defendants, the plaintiff and the Adriatic Woollen Mills, that the draft should be drawn by the Adriatic Woollen Mills, accepted by the defendants, and discounted by the bank; that the proceeds should be used to pay the note and draft then held by the bank against the Adriatic Woollen Mills, and that the note and draft thus paid should be delivered by the bank to the defendants. In accordance with this agreement, the Adriatic Woollen Mills made the draft to their own order and indorsed it to the bank, by which it was discounted and the proceeds passed to the credit of the drawers, and the defendants then accepted the draft in writing, unconditionally, in accordance with their promise made before the draft was drawn. Apparently the draft was indorsed and delivered to the plaintiff by the draw ers the day before the defendants wrote their acceptance upon it. It is a necessary part of this agreement that the bank should, on discounting this draft, become the owner of it. The indebtedness of the Adriatic Woollen Mills to the bank on the note for $1500 and the draft for $886.63, whether that was an indebtedness of the old firm or of the new, could not be paid until this was done; and, until this indebtedness was paid to the bank, the note and draft were not to be delivered to the defendants. A condition that the draft declared on should not become the property of the bank until the note and draft then held by the bank were delivered to the defendants, is inconsistent with the agreement that the draft accepted by the defendants should be discounted by the bank in order to pay out of the proceeds the note and draft then held by it; and there is no evidence which would warrant a jury in finding that the draft in suit was delivered to the bank on any such condition. There was no evidence from which the jury could find that the Adriatic Wool len Mills, in indorsing and delivering this draft to the plaintiff,

intended that the plaintiff should take no title to or interest in it until the note and draft then held by it were delivered to the defendants.

It is unnecessary to consider whether this court would follow the decision in *Bell* v. *Ingestre*, 12 Q. B. 317, if the facts were the same.                                                              *Exceptions overruled.*